THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

*****************************************************************

IN RE: :
: CHAPTER 13
RANDYS DURAN :
 a/k/a Randy S. Duran :
 a/k/a/ Randy Duran :
 d/b/a/ Eddie's Auto Sales :
: CASE NO. 5:12 - bk - 00063
         Debtor :

*****************************************************************

RANDYS DURAN : CHAPTER 13
:
        Plaintiff, :
:
vs. : ADV. NO.:_____
:
BENEFICIAL CONSUMER :
DISCOUNT COMPANY :
:
AND :
:
CHARLES J. DEHART, III, ESQ. :
CHAPTER 13 TRUSTEE :
        Defendants :

*****************************************************************

<u>COMPLAINT TO DETERMINE THE VALIDITY AND EXTENT OF MORTGAGE LIEN
UNDER 11 U.S.C. SECTION 506(d) AND 11 U.S.C. SECTION 1322 (b)(2)</u>

*****************************************************************

NOW COMES, Randys Duran, by and through his counsel, Tullio DeLuca, Esq., and files this Complaint and states the following:

1. On January 5, 2012, Randys Duran, (hereinafter "Plaintiff/ Debtor") filed a petition under Chapter 13 Title 11, U.S. Code in the United States Bankruptcy Court for the Middle District of Pennsylvania.

2. Charles J. DeHart, III, Esquire was appointed the standing Chapter 13 Trustee in the above case.

3. Defendant, Beneficial Consumer Discount Company, is Mortgagee of record for

real property located at 1009 W. 15th St., Hazleton, Pennsylvania 18201, and was a creditor of the Debtor at the time of the filing of the Chapter 13 Bankruptcy Petition.

4. This Court has jurisdiction under 28 U.S.C. Section 1334 and 28 U.S.C. Section 157.

5. This is an action under 11 U.S.C. Section 506(d) and 11 U.S.C. Section 1322(b)(2) to determine the validity and extent of Defendant's secured claim against Debtor's real property.

6. When the Debtor filed his Chapter 13 Bankruptcy Petition, the Debtor was the fee simple owner of real estate located at 1009 W. 15th St., Hazleton, Pennsylvania 18201. (hereinafter "the property").

7. The Debtor believes, and therefore avers, that the present market value of the real property located at 1009 W. 15th St., Hazleton, Pennsylvania 18201, is $39,594.00.

8. Defendant retains a second mortgage lien against the property with a balance of $28,561.00 as of the Petition date. A true and correct copy of said recorded mortgage is attached hereto and marked as Exhibit "A."

9. BAC Home Loans Servicing, LP, retains a first mortgage lien against the property with a balance of $128,110.00 as of the petition date. As such, Beneficial Consumer Discount Company's second mortgage lien is subject to being avoided in its entirety pursuant to 11 U.S.C. Section 506 (d).

10. Therefore, Defendant's second mortgage lien is subject to being avoided in its entirety pursuant to 11 U.S.C. Section 506, since the fair market value of the property is less than the balance owed on the first mortgage lien.

WHEREFORE the Debtor prays that this Honorable Court enter an Order approving the

avoidance of the second mortgage lien in its entirety, as the value of the property is less than the balance of the first mortgage lien.

Respectfully Submitted,

_____
Tullio DeLuca, Esquire
PA ID #59887
Counsel for Plaintiff
381 North 9th Street
Scranton, PA 18504
(570)347-7764

Dated: 2/20/h

**Exhibit "A"**

## SECONDARY MORTGAGE LOAN
* This agreement is subject to the provisions of the Secondary Mortgage Loan Act
### REVOLVING LOAN FIXED RATE AGREEMENT (Page 1 of 5)

LENDER (called "We", "Us", "Our")
BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF PENNSYLVANIA
93 AIRPORT ROAD
SUITE B
HAZLETON PA 18202

BORROWERS (called "You", "Your")       LOAN NO: ▓▓▓▓▓▓▓▓
DURAN, RANDYS
SS# ▓▓▓▓
1009 W 16TH STREET
HAZLETON PA 18201



| ON PORTION OF AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | ANNUAL PERCENTAGE RATE | CREDIT LIMIT | DATE OF LOAN | APPLICATION FEE (POINTS)/ FINANCE CHARGE |
|---|---|---|---|---|---|
| .01 AND OVER | 1.650 % | 19.790 % | 28000 | 01/31/07 | $ 870.00 |
| | | | INITIAL ANNUAL FEE | SUBSEQUENT ANNUAL FEE | DISCOUNT FEE (POINTS)/ FINANCE CHARGE |
| | | | 50.00 | 50.00 | $ .00 |

In this Agreement, "you", "your" and "Borrower" mean the customer(s) who signs this Agreement. "We", "us", and "our" refer to Lender. This Agreement covers the terms and conditions of your Home Equity Credit Line Revolving Loan Account. We want you to understand how your Home Equity Credit Line Revolving Loan Account works. Read this carefully, ask us any questions, and if you agree to be bound by this Agreement, sign below. If more than one person signs, each will be responsible for repaying all sums advanced under this Agreement.

Your Home Equity Credit Line is a revolving line of credit extended to you and secured as described below. You can obtain funds from your Home Equity Credit Line Revolving Loan Account (up to your credit limit) directly from us or by using the special checks we supply to you. You may pay your total unpaid balance at any time or in installments.

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS.**

REQUIRED INSURANCE. You must obtain insurance for term of loan covering security for this loan as indicated by the word "YES" below, naming us as Loss Payee:
   Title Insurance on real estate security.
   Hazard Insurance on real estate security.

   You may obtain any required insurance from anyone you choose.

NOTICE: SEE THE FOLLOWING PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.
09-15-03
F PHL

▓▓▓▓▓▓▓▓ *DURAN    *    ORIGINAL

## REVOLVING LOAN FIXED RATE AGREEMENT (Page 2 of 5)

**Available Credit:** You may obtain funds directly from us or through your special checks up to your available credit. Your available credit is your credit limit (shown on page one) less the total unpaid balance, including Finance Charges, of your Account. If you make loan payments by check, we will adjust your available credit seven days after we receive your check to allow for check clearing. You agree not to request funds in an amount that would cause you to exceed your available credit. If you do so, we are not obligated to honor your request, but if we do lend you an amount over your available credit, you agree to pay us that excess amount, plus Finance Charges, immediately upon our request.

**Minimum Draw and Balance Requirements:** The maximum amount that may be withdrawn in any billing cycle is your available credit. The minimum credit advance by check that you can receive is $100.

**Promise to Pay:** You promise to pay Lender: (a) amounts borrowed under this Agreement; (b) Finance Charges; Administrative Charges (bad check charges and late charges), and other charges provided in this Agreement; (c) credit insurance charges, if any; (d) collection costs permitted by applicable law, including reasonable attorneys' fees (if attorney is not our salaried employee) and court costs; (e) amounts in excess of your credit limit that we may lend you; and (f) amounts that we may (but need not) pay or that are otherwise due under your Mortgage.

**Payments:** You may repay your entire outstanding balance at any time without penalty. You may not use your special checks to pay any amounts due under this Agreement. Because the Periodic Finance Charge is computed each day, you will contact us regarding the exact payoff amount for the day you intend to make full payment.

If you do not pay the entire unpaid balance on your Account at once, you agree to pay at least the minimum payment shown on your monthly statement. Payments will be applied as follows: First, to any accrued but unpaid Finance Charges; Second, to any unpaid Administrative Charges provided in this Agreement; Third, to any unpaid credit insurance charges; and Fourth, to the unpaid outstanding balance of your Account (including all other fees or charges you are obligated to pay). Any part of your monthly payment to be applied to amounts borrowed on your Account will be applied to the amounts borrowed under your Account in the order in which the amounts were borrowed. Any part of your monthly payment to be applied to Finance Charges will be applied in the same manner.

The Minimum Monthly Payment for any billing cycle will be the greater of (1) the greater of $25 or the Base Minimum Monthly Payment Amount (as described below), plus any Administrative Charges and credit insurance charges, rounded to the nearest $1; or (2) the Finance Charges due for the billing cycle, plus any Administrative Charge and credit insurance charges; In each instance, the Minimum Monthly Payment will be adjusted to include any unpaid amounts due from prior billing cycles or; (3) the amount of the Annual Fee assessed to your Account.

The Base Minimum Monthly Payment depends on the monthly periodic rate applicable to your Account, and is calculated as follows:

| Monthly Periodic Rate | Base Minimum Monthly Payment |
| --- | --- |
| through 1.33% | 1.43% of Account Balance |
| over 1.33% through 1.45% | 1.55% of Account Balance |
| over 1.45% through 1.57% | 1.67% of Account Balance |
| over 1.57% through 1.70% | 1.80% of Account Balance |
| over 1.70% through 1.83% | 1.93% of Account Balance |
| over 1.83% | 2.00% of Account Balance |

The term of this Agreement will end 15 years after the date of this Agreement, at which time you will be required to pay your entire remaining outstanding balance, plus all charges and Finance Charges as provided in this Agreement. The Minimum Monthly Payment will not fully repay the principal that is outstanding under this Agreement at the end of the 15-year term, and you will then be required to pay the entire remaining outstanding balance in a single payment.

**Finance Charges:** Finance Charges are the total of (a) Periodic Finance Charges, (b) the Prepaid Finance Charges, and (c) Closing Fee/Settlement Fee.

(a) **Periodic Finance Charges:** This is the interest charged on the balance of your Account during each billing cycle. The Periodic Finance Charge is calculated from the date that each advance, check or charge is posted to your Account. The Periodic Finance Charge is computed by multiplying the average daily balance in your Account in each billing cycle times the monthly periodic rate stated on page one. The average daily balance is determined by totaling all daily unpaid balances in each billing cycles and dividing the total by the number of days in that cycle. A daily unpaid balance is the amount owed each day, excluding any unpaid Periodic Finance Charge, Administrative Charges, and credit insurance charges for prior billing cycles.

NOTICE: SEE THE FOLLOWING PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.
09-15-03
F PHL

**DURAN * ORIGINAL

## REVOLVING LOAN FIXED RATE AGREEMENT (Page 3 of 5)

*(b) **Prepaid Finance Charges:** Prepaid Finance Charges are the sum of the Application Fee (Points) and the Discount Fee (Points). The Application Fee (Points) is the one-time fee we charge for opening this Account. The Discount Fee (Points) is a sum paid by you to decrease the interest rate. The amount of the Application Fee (Points) and Discount Fee (Points) is shown on page one of this Agreement.

(c) **Closing/Settlement Fee:** This is a one time fee shown on the Revolving Loan Voucher that is charged for services rendered in connection with the closing of your loan.

**Annual Fee:** You agree to pay an Annual Fee as stated on page one for participation in this revolving credit plan. The Initial Annual Fee is stated on page one and is due and payable on the date that your Account is established, and the subsequent Annual Fee stated on page one is due and payable on the same day of each subsequent year. You agree that this fee may be charged to your Account balance.

**Bad Check Charge:** If you pay by a check which is returned for any reason, you agree to pay a bad check charge of $20.

**Late Charge:** If you do not pay any required Minimum Monthly Payment within 15 days after it is due, you agree to pay late charge of 10% of the Minimum Monthly Payment due or $20, whichever is greater (excluding any unpaid late charges and amounts due from prior billing cycles.

**Other Charges:** You agree to pay any amounts actually incurred by Lender for services rendered in connection with the Credit Line Revolving Loan Account for title examination, appraisal, title insurance, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Mortgage. You agree that these fees may be charged to your Account balance.

**Security:** The real estate Mortgage will secure all indebtedness, including future advances, under this Agreement.

**Credit Reporting and Customer Information Practices:** If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to you. You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by Applicable Law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents.

**Changes in this Agreement:** We may change the terms of this Agreement if you consent or if such changes benefit you or are insignificant. We may change any amounts that we collect for taxes, property insurance, or credit insurance, if applicable. Prior written notice of changes will be given to you when required by applicable law. Changes may apply to both new and outstanding balances unless prohibited by applicable law. Termination of your credit limit will occur only as provided in the "Default and Cancellation of Agreement" and "Suspension or Reduction of Credit Privileges" paragraphs.

**Tax Deductibility:** You should consult a tax advisor regarding the deductibility of interest and charges for the credit line.

**Default and Cancellation of Agreement:** We have the right to terminate your Home Equity Credit Line Account and to require you to pay your entire balance plus all other accrued but unpaid charges immediately because of:
(a) failure to make two or more payments when due under this Agreement;
(b) fraud or material misrepresentation in connection with the credit line, including failure to supply us with any material information requested or supplying us with misleading, false, incomplete or incorrect material information;
(c) the filing of a bankruptcy petition by or against you accompanied by failure to make any payment when due under this Agreement;
(d) the death of any borrower who signs this Agreement which adversely affects the property or our rights in the property securing this Agreement ;
(e) the institution of foreclosure proceedings or condemnation proceedings on the property or the institution of a trustee sale by a lienholder or governmental seizure of the property;
(f) the sale or transfer of any interest in the property securing this Agreement, without our consent (unless our consent is not required under your Mortgage);
(g) the creation of a lien on the property if such lien adversely affects the property or our rights in the property securing this Agreement;

NOTICE: SEE THE FOLLOWING PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.
09-15-03
F PHL

DURAN     ORIGINAL

REVOLVING LOAN FIXED RATE AGREEMENT (Page 4 of 5)

- (h) failure to maintain the property, failure to pay real estate taxes on the property, abandonment of the property, failure to keep the property insured, or any action which is a default under your Mortgage or Deed of Trust which adversely affects the property or our rights in the property securing this Agreement; or
- (i) any other action or inaction you take that adversely affects the property or our rights in the property securing this Agreement.

After default, you will pay our court costs, reasonable attorney fees (if attorney is not our salaried employee), and other collection costs related to the default, if not prohibited by applicable law.

Any balance outstanding under this Agreement when the credit limit is terminated will continue to accrue interest at the contract rate until paid in full, or until judgment is entered.

Suspension or Reduction of Credit Privileges: We have the right to prohibit additional advances or extensions of credit and to reduce the credit limit applicable to this Agreement if:
- (a) the amount of your unused equity in the property securing this Agreement has decreased by 50% or more (from the amount of your unused equity at the time the current credit limit was established), based on a decrease in the appraisal value from the time the current credit limit was established;
- (b) we reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances (including the filing of a bankruptcy petition);
- (c) you are in default of any of the material terms or conditions of this Agreement, including frequent overdraws of your line of credit or failure to use or occupy the property securing this Agreement as your primary residence;
- (d) any governmental action occurs that prevents us from charging the annual percentage rate provided for in this Agreement or that adversely affects our rights in the property securing this Agreement such that the value of our security interest in the property is less than 120% of your credit limit;
- (e) any regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice;
- (f) any borrower who signs this Agreement requests us to prohibit additional advances or to reduce the credit limit; or
- (g) any of the events listed under "Default and Cancellation of Agreement" occurs.

Notice will be given to you as required by applicable law.

Miscellaneous: If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this Agreement will remain valid and enforceable. Our failure to enforce any terms of this Agreement shall not be deemed to constitute a waiver of such terms. In order for any amendment to this Agreement to be valid, it must be approved by us in writing.

## YOUR BILLING RIGHTS
## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and Lender's responsibilities under the Fair Credit Billing Act.

Notify Lender In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write Lender on a separate sheet at the address listed on your bill after the words: "Send your billing error notice to: (Lender's name and address)." Write to Lender as soon as possible. Lender must hear from you no later than 60 days after Lender sent you the first bill on which the error or problem appeared. You can telephone Lender, but doing so will not preserve your rights.

In your letter, give Lender the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about7

NOTICE: SEE THE FOLLOWING PAGE FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.

09-15-03
F PHL

DURAN  ORIGINAL

## REVOLVING LOAN FIXED RATE AGREEMENT (Page 5 of 5)

**Your Rights and Lender's Responsibilities After Lender Receives Your Written Notice**

Lender must acknowledge your letter within 30 days, unless Lender has corrected the error by then. Within 90 days, Lender must either correct the error or explain why Lender believes the bill was correct.

After Lender receives your letter, Lender cannot try to collect any amount you question, or report you as delinquent. Lender can continue to bill you for the amount you question, including finance charges, and Lender can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while Lender is investigating, but you are still obligated to pay the parts of your bill that are not in question.

If Lender finds that Lender made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If Lender did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, Lender will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Lender thinks you owe, Lender may report you as delinquent. However, if Lender's explanation does not satisfy you and you write to Lender within ten days telling Lender that you still refuse to pay, Lender must tell anyone Lender reports you to that you have a question about your bill. And, Lender must tell you the name of anyone Lender reported you to. Lender must tell anyone Lender reports you to that the matter has been settled between us when it finally is.

If Lender doesn't follow these rules, Lender can't collect the first $50 of the questioned amount, even if your bill was correct.

**Alternative Dispute Resolution and Other Riders:** The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference.

**Applicable Law:** The terms and conditions of this Agreement will be governed by the provisions of the Pennsylvania Secondary Mortgage Loan Act, Title 7, Chapter 66, Sections 6601 through 6627, Purdon's Pennsylvania Statutes.

Before signing this Agreement, you have read and received this Agreement and the Federal Truth-In-Lending disclosures contained in it. You, the customer(s) signing below, agree to observe the terms and conditions of this Agreement. This Agreement is governed by the provisions of Pennsylvania Secondary Mortgage Loan Act and applicable Federal law.

_[signed]_
Customer Signature

Customer Signature

Date: 1-31-07

Date:

_[signed] Patricia A. Phillips_
Witness:

Witness:

09-15-03
F PHL



DURAN   ORIGINAL

This instrument was prepared by:

<u>CAROL BURKE</u>
(Name)

<u>93 AIRPORT RD., HAZLETON, PA</u> 18202
(Address)

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126
(800) 547-8776

UPI # ▬▬▬▬

07 APR 17 AM 8:02

RECEIVED
CPUE 3#

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

## MORTGAGE

[X] IF BOX IS CHECKED, THIS MORTGAGE IS AN OPEN-END MORTGAGE AND SECURES FUTURE ADVANCES.

THIS MORTGAGE is made this day <u>31ST</u> of <u>JANUARY</u> <u>2007</u>, between the Mortgagor, RANDY S. DURAN,

(herein "Borrower") and Mortgagee <u>BENEFICIAL CONSUMER DISCOUNT COMPANY D/B/A BENEFICIAL MORTGAGE CO OF PENNSYLVANIA</u>,
a corporation organized and existing under the laws of <u>PENNSYLVANIA</u>, whose address is <u>93 AIRPORT ROAD, SUITE B, HAZLETON, PA 18202</u>
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

[ ] WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____,
evidenced by Borrower's Loan Repayment and Security Agreement or Secondary Mortgage Loan Agreement dated _____ and any extensions or renewals thereof (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on _____ ;

[X] WHEREAS, Borrower is indebted to Lender in the principal sum of $ <u>29,000.00</u>,
or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated <u>JANUARY 31, 2007</u> and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ <u>29,000.00</u>;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon, including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the County of <u>LUZERNE</u> Commonwealth of Pennsylvania:

SEE EXHIBIT A-LEGAL DESCRIPTION

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11-11-05 MTG                 DURAN           * ORIGINAL

-2-

"TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment

11-11-05 MTG

×DURAN × ORIGINAL

REC Book 3007 Page 53177

-3-

and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Volunatary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Peridic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000, as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured)

11-11-05 MTG



*XOURAN     × ORIGINAL

REC Book 3007 Page 53178

-4-

or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Prior Mortgages and Deed of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or

11-11-05 MTG


DURAN        * ORIGINAL

REC Book 3007 Page 53179

-5-

governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the contract rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may take or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability

11-11-05 MTG

URAN * ORIGINAL

REC Book 3007 Page 53180

-6-

of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The

11-11-05 MTG

**DURAN** ORIGINAL

REC Book 3007 Page 53181

-7-

notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof, in abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. **Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property under state or Federal law.

22. **Interest Rate After Judgment.** Borrower agrees the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate stated in the Note.

23. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage.

11-11-05 MTG     DURAN     X     ORIGINAL

REC Book 3007 Page 53182

-8-
## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

*Randy S Duran* — RANDY S. DURAN — -Borrower

A/K/A RANDYS DURAN — -Borrower

I hereby certify that the precise address of the Lender (Mortgagee) is:
93 AIRPORT RD., SUITE B, HAZLETON, PA 18202
On behalf of the Lender. By: T. MAUS                Title: BSM

COMMONWEALTH OF PENNSYLVANIA, LUZERNE County ss:
I, PATRICIA PHILLIPS a Notary Public in and for said county and state, do hereby certify that RANDY S. DURAN AND RANDYS DURAN
personally known to me or proven satisfactorily to be the same person(s) whose name(s) IS subscribed to the foregoing instrument, appeared before me this day in person, and acknowledge that  x  he  x  signed and delivered the said instrument as HIS free voluntary act, for the uses and purposes therein set forth.
Given under my hand and official seal, this 31ST day of JANUARY, 20 07.

My Commission expires

NOTARIAL SEAL
PATRICIA A PHILLIPS
Notary Public
DORRANCE TWP, LUZERNE COUNTY
My Commission Expires Sep 27, 2010

*Patricia A Phillips*
Notary Public

COMMONWEALTH OF PENNSYLVANIA, _____ County ss:
I, _____ a Notary Public in and for said county and state, do hereby certify that _____
personally known to me or proven satisfactorily to be the same person(s) whose name(s) _____ subscribed to the foregoing instrument, appeared before me this day in person, and acknowledge that ___ he ___ signed and delivered the said instrument as _____ free voluntary act, for the uses and purposes therein set forth.
Given under my hand and official seal, this _____ day of _____, 20____.

My Commission expires:                                    _____
                                                          Notary Public

11-11-05 MTG

*DURAN      *ORIGINAL

REC Book 3007 Page 53183

-9-

———————————— (Space Below This Line Reserved For Lender and Recorder) ————————————

11-11-05 MTG

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
*DURAN     * ORIGINAL

REC Book 3007 Page 53184

EXHIBIT A (PAGE 1)

ALL THAT CERTAIN PROPERTY SITUATED IN THE CITY OF HAZLETON IN
THE COUNTY OF LUZERNE AND COMMONWEALTH OF PENNSYLVANIA,
BEING MORE FULLY DESCRIBED IN A DEED DATED 01/20/2006 AND
RECORDED 01/24/2006, AMONG THE LAND RECORDS OF THE COUNTY
AND STATE SET FORTH ABOVE, IN DEED VOLUME 3006 AND PAGE
▇▇▇▇ TAX MAP OR PARCEL ID NO.: ▇▇▇▇

RECORDER OF DEEDS
LUZERNE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER

RECORDED ON
Mar. 01, 2007
10:03:30 AM
BOOK: REC/3007
PAGE: 53176
Total Pages: 10

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| LUZERNE COUNTY RECORDING FEE | $25.00 |
| LUZERNE COUNTY ARCHIVES FEE | $2.00 |
| LUZERNE RECORDER'S ARCHIVES FEE | $3.00 |
| LUZERNE COUNTY HOUSING TRUST FUND | $13.00 |
| TOTAL PAID | $53.50 |



MORTGAGE
LOAN #
US Recordings



CERTIFIED PROPERTY IDENTIFICATION NUMBER
MUNICIPALITY Hazleton City BLOCK 2 LOT 5
PIN MAP ___ DIVISION ___
TRANSFER 2-13-07 MAPPING CLERK
DATE



I hereby CERTIFY that this
document is recorded in the
Recorder of Deeds Office of
Luzerne County, Pennsylvania.

Mary K Dysleski
MARY K. DYSLESKI
RECORDER OF DEEDS



▇▇▇DURAN    ORIGINAL

REC Book 3007 Page 53185